**H. F. SEESTEDT v. SOUTHERN LAUNDRY, INC., a Florida corporation, T. L. ELVINS, E. W. ELVINS and W. E. JUNK.**

5 So. (2nd) 859                                                    Division B
January 27, 1942                    Rehearing Denied February 19, 1942

Peters & Kemp, for appellant.
Walsh & Ellis and Knight & Green, for appellees.

THOMAS, J.:

The chancellor dismissed a bill of complaint, expressing in his order the view that the pleading was "beyond hope of amendment" and it is this ruling which is challenged in the appeal.

The suit involved twenty-five shares of stock in the defendant corporation, Southern Laundry, Inc. There were outstanding, at the time the suit was commenced, one hundred and fifty shares of stock in the company, seventy-five of them owned by appellee Elvins and wife, fifty by the appellant and wife and twenty-five held by the corporation "as treasury stock."

At the beginning of the period relevant to the transaction brought into question, the interests of the stockholders were the same as we have outlined except

that the so-called treasury stock was owned by one W. F. Dewey and his wife. The Seestedts had been given an option to buy the stock of the Deweys for the sum of one thousand dollars, to be paid five hundred dollars in cash and the remainder eighteen months later. While this instrument was still extant Elvins called upon the appellant and represented that Dewey was eager to close the sale, whereupon, Seestedt, who was bedridden and "hard pressed for funds," asked Elvins for an advance of five hundred dollars from the corporation for a short period of time until he could regain his strength and resume supervision of his business affairs, this amount to be delivered to the Deweys as the first payment on the purchase price of the stock.

At this time, according to the bill, Elvins was president of the corporation, Seestedt was vice president and these two men and their wives constituted the board of directors. Elvins agreed to this proposition—the corporation was then indebted to Seestedt for money loaned to it by him—and proceeded to acquire the Dewey stock, not for Seestedt in accordance with the agreement between them, but in behalf of the corporation itself, thereby, according to the charge of Seestedt placing control of the company in Elvins instead of making the interests of the Elvinses and the Seestedts equal as would have been the case had the shares been transferred to Seestedt.

Upon regaining his health Seestedt delivered to Elvins a check for one thousand dollars, payable to the corporation, representing the amount of the purchase price of the Deweys' stock, and gave instructions to Elvins to apply five hundred dollars to repayment

of the loan from the corporation and to pay Dewey the balance due him.

From the years 1934 until 1937, when the plaintiff discovered that the contrary was true, Elvins assured him that he had purchased the stock according to instructions and it was not until the latter year that Seestedt learned for the first time that Elvins had actually caused the stock to be transferred to the corporation. For approximately a year Elvins continued to assure Seestedt that the stock would be registered in his name in the corporate books but, finally, in 1938 Elvins repudiated the entire transaction.

The plaintiff asked the court to declare the twenty-five shares of stock to be held by the corporation in constructive trust and to require its transfer to the plaintiff.

At the outset we may observe that according to the allegations of the bill of complaint which we have analyzed Elvins, when he left Seestedt's bedside with the purpose of buying the stock for the latter, was undertaking to represent his colleague. Although they were both officers and stockholders in the corporation at the time of their conversation they were dealing with each other as individuals. It is well to bear in mind, too, that the purchase of the stock from the Deweys was accomplished by reason of an option to which the corporation was not a party and which at the time was available only to Seestedt.

It is the contention of the appellant that the circumstances which he outlined in his bill of complaint establish a constructive trust and show that the twenty-five shares of stock, for the purchase of which he had an option, are now held by the corporation as trustee. Trusts of this character may result from actual or

constructive fraud or from some equitable principle independent of fraud. 26 R.C.L. 1232 approved in Quinn v. Phipps, infra. Thus, it has been held that such a trust arose where a broker employed to purchase land for his principal eventually bought it for himself although he used his own funds, Quinn v. Phipps, 93 Fla. 805, 113 So. 419, and that an agent engaged to interest a third person in purchasing bonds and foreclosing the trust deed securing them in order to refinance the property was a constructive trustee where he brought the encumbered land at a master's sale in his own behalf and personally executed a purchase money mortgage, Fisher v. Grady, et ux., 131 Fla. 1, 178 So. 852.

The principle established in these and other like decisions seems entirely appropriate to the factual situation set out in the bill of complaint. Elvins was not representing the corporation when he agreed with Seestedt to consummate the transfer of the stock from Dewey but was Seestedt's emissary. It is evident that when Dewey had finally withdrawn from the scene and had no further interest as a shareholder the stock which he held had been transferred to the corporation, although his option was executed to Seestedt. Taking the allegations of the bill to be true, which must be done for the purpose of judging the sufficiency of the motion to dismiss, the corporation was reimbursed for the five hundred dollars it originally paid to Dewey and also received the five hundred dollars which represented the final payment due under the option.

The position of the plaintiff, which appears to us sound, is not undermined by the contention of the

appellees that there was no authority on the part of the corporation to make the original payment of five hundred dollars. Long before the bill of complaint was filed the corporation had accepted from Seestedt the amount of this advance and, too, had received the money for the last payment due under the option so that the corporation now holds the stock and also has one thousand dollars of money paid it by Seestedt.

The appellees do not contend that the corporation had no right to use its funds for the purchase of the stock in its own behalf but do insist that there was no right to loan funds to Seestedt and that Elvins "could not have acted as agent for Seestedt as against the interests of the corporation." Despite the irregularity of using moneys from the treasury of the company to make the first payment to Dewey there seems little need to spend time discussing this loan because it was repaid long ago and the corporation, so far as we can learn from the bill of complaint, has suffered no loss from this transaction. ·

The principal objection to the bill of complaint, as we understand it from the record and from the brief of the appellees, is that it showed there had been a violation of the rule that an officer or director of a corporation will not be permitted to make a private profit from his position or, while acting in that capacity, acquire an interest adverse or antagonistic to that of the corporation. That rule has long been recognized but we are utterly unable to comprehend its applicability in the circumstances outlined in the bill of complaint. We can think of no reason why a duty or responsibility rested upon either Seestedt or Elvins to purchase the stock of Dewey on behalf of the corporation or how the assets of that company possibly

could have been influenced by such a transaction. It was quite legitimate for Seestedt to have accepted an option from Dewey for the purchase of the latter's interest and we know of no law which placed an obligation on Seestedt to secure it for the company. Likewise, we are not advised why there was any duty on the part of Elvins to do so even if Seestedt had not held the option.

The stock was merely evidence of the proportionate interest in the company held by Dewey and from the viewpoint of the corporation the only difference between the ownership of this stock by it and by Seestedt was that in the former instance there would be one hundred and twenty-five shares outstanding, while in the latter there would be one hundred and fifty shares held by the stockholders.

It is too obvious to escape notice and comment that from the standpoint of the appellee Elvins the effect of dismissing the bill was to leave him the owner of a majority of the stock, namely, seventy-five shares, while the appellant Seestedt held but fifty shares thereby giving the former the controlling interest.

Seestedt had the right to purchase the stock from Dewey and when Elvins went forward to see that that was done in accordance with the terms of the option he was Seestedt's agent. Although both were officers and directors of the corporation they were free to deal in the corporate stock. Neither was obligated to purchase it for the benefit of the corporation. Keely v. Black, 91 N. J. Eq. 520, 111 A. 22; Hauben v. Morris, 255 App. Div. (N. Y.) 35, 5 N.Y.S. 2d. 721.

We conclude that the bill of complaint contained equity and should not have been dismissed, so the decree is reversed with directions that the chancellor

proceed in accordance with the views we have expressed.

Reversed.

BROWN, C. J., TERRELL, and CHAPMAN, JJ., concur.