George Agatucci, Appellee, v. George Corradi et al., Defendants. George Corradi et al., Appellants.

Gen. No. 43,136.

Heard in the third division of this court for the first district at the October term, 1944. Opinion filed November 7, 1945. Released for publication November 27, 1945.

CHESTER D. KERN and OTTO M. HAMER, both of Chicago, for appellants.

BARNEY L. HOLLOWICK and DAVID S. CHESROW, both of Chicago, for appellee.

MR. PRESIDING JUSTICE KILEY delivered the opinion of the court.

This is an equitable action founded on the alleged fraud and deceit of the individual defendants in the purchase of plaintiff's stock in the Chicago Heights Transportation Company. The proceedings were begun in the Circuit Court of Peoria County and were transferred to Cook County on motion of the South Suburban Safeway Lines. The decree based on a master's report awarded plaintiff $5,701.00, reimbursed him for the master's fees and taxed the costs against the defendants. All defendants except the South Suburban Safeway Lines have appealed.

The Individual defendants, Corradi and Petronio, were brothers-in-law. They and the plaintiff were each owners of one-third of the stock of the Chicago Heights Company from 1928 to March 12, 1940, when they became the owners of plaintiff's stock. During most of that period the three men each took an active interest in the operation of the business, which was the motor transportation of passengers. They alternatively drove busses and worked in the garage. In 1938 plaintiff went to Peoria to engage in the grocery business with relatives. He returned to Chicago Heights and the business in the Spring of 1939. July 20th following he again went to Peoria and thereafter was not engaged in the business.

January 6, 1939, plaintiff, Corradi and Petronio made an agreement specifying their relations as stockholders. Among other things it provided that in the event of a sale of the interest of one, the others would have a ten day option to purchase. July 1, 1939, plain-

tiff gave notice to Corradi and Petronio of his intention to sell. Neither one exercised the option.

The agreement also provided that should any of the owners engage in outside business, he could place in his stead any able, competent worker approved by the other owners, to carry out his duties and to receive the same compensation as others performing like duties. Plaintiff, Corradi and Petronio drew the same salaries. July 20, 1939, before leaving for Peoria, plaintiff executed an assignment of his stock certificates to his son-in-law Costabile for a purported consideration of $9,000.

At the annual meeting of the Company in February 1940, plaintiff offered to sell his stock to Petronio for $7,000. The offer was refused. Early in March, however, Petronio importuned plaintiff to sell and finally agreed to buy at the $7,000 figure. Costabile reassigned the certificates to plaintiff who sold them to Corradi and Petronio under an escrow agreement wherein the stock was pledged to secure payment installments. Thereafter, plaintiff resigned as director of the Company in a transaction wherein he was paid in full for the stock.

March 21, 1940 the physical assets of the Chicago Heights Company were sold to South Suburban Safeway Lines, Inc. under a sale, and lease and sale, arrangement for $40,000. Under this agreement it transferred its rights under its certificates of convenience and necessity and its franchises, subject to their being restored to it should the South Suburban Company default in monthly payments of "rent". Should there be no default in the 56 monthly payments of "rent", the transfer of these rights was to become absolute. The agreement was made between the Companies and executed by the Chicago Heights Company through Corradi, as President, and Petronio, as Secretary. Plaintiff had no knowledge of this transaction until after its consummation.

The question is whether Corradi and Petronio as officers of the Company violated a duty to plaintiff, as stockholder, to disclose to him, before buying his stock, information of the pending sale. Plaintiff alleges and the master and trial court found that Corradi and Petronio owed plaintiff the duty and violated it by deliberately hiding information from him.

The award of $5,701 represents the difference between the $7,000 paid plaintiff by Corradi and Petronio and $13,333.33, being the value of the stock measured by the sale price, less certain deductions. The deductions were on account of liabilities of the Company shown in an affidavit executed pursuant to the Bulk Sales Act. There appears to be no dispute about the amount awarded.

Defendants, who are the appellants, moved to strike and dismiss the complaint as insufficient in equity. The order denying the motion is assigned as error. They say that though discovery and accounting were prayed, neither was needed under the circumstances; that plaintiff did not offer to do equity in that he did not tender back the $7,000 to Corradi and Petronio or ask to be restored to his position as stockholder; and that the action is merely a legal demand for money.

It is true that neither an accounting nor discovery were needed. An injunction was sought, but became unnecessary when an agreement between the parties effected the same result. These considerations, however, are not important in view of our conclusion on the question whether or not an equitable cause of action was set out in the complaint.

The substance of the allegations taken as true, to test the complaint, is that Corradi and Petronio contemplated the sale of the Chicago Heights Company business when they purchased his stock; that he knew nothing of the proposed sale; that they deliberately withheld the information; that he would not have sold for $7,000 had he known the facts; and that he should

have the real value of his stock as determined by the sale price of the business.

Defendants rely upon the general rule that though they, as directors and officers of the Chicago Heights Company, were trustees for the stockholders as a body in respect to its business and property, they were not plaintiff's trustee with respect to his stock and were free to purchase his stock, being liable only for actual fraud. *Hooker v. Midland Steel Company,* 215 Ill. 444, and *Bawden v. Taylor,* 254 Ill. 464. The actions in the cases cited were to set aside the sales of stock, and the facts are different from those in the instant case. In the *Hooker case* the court said that mere failure to disclose information affecting the value of stock in the absence of actual fraud would not avoid a purchase thereof by a director. In the *Bawden case* the court said plaintiff could sustain his claim only by showing that false representations were made. The general rule was applied by this court in *Wood v. MacLean Drug Co.,* 266 Ill. App. 5, and in *Anchor Realty & Invest. Co. v. Rafferty,* 308 Ill. App. 484.

The rule followed in this State is called the majority rule in a division of authority on this question. Fletcher Cyc. Corp. Perm. Ed. Vol. 3, p. 606. Under the minority rule, adverted to in *Wood v. MacLean Drug Co.,* by reference to a *Georgia case,* directors are considered trustees for individual stockholders with respect to their stock. Massachusetts and Michigan also follow the majority rule. In those states on authority of *Strong v. Rapide,* 213 U. S. 419 an exception to the rule is recognized. *Buckley v. Buckley,* 230 Mich. 504; *Gammon v. Dain,* 212 N. W. Rep. (Mich.) 957; and *Goodwin v. Agassiz,* 283 Mass. 358. "Special circumstances" such as an assured sale enhancing the value of the stock, known to the officers but not to the stockholder and not ascertainable from the books, modify the "mere failure to disclose" doctrine. *Buckley v. Buckley.*

There appears to be no "special circumstance" case in Illinois, although the exception was noted in *Wood v. MacLean Drug Co.* We believe, however, that the Michigan and Massachusetts cases referred to are respectable precedents. We shall follow them. We think this case presents an "assured sale" case with the facts known to Corradi and Petronio and wrongfully held by them from plaintiff in violation of their trust. We find that the complaint stated an equitable cause of action.

Plaintiff's action is not to rescind the sale of stock. His case rests upon the continuation in force of the contract of sale. Under these circumstances it was not necessary for plaintiff to offer back to Corradi and Petronio the $7,000 which he received under the sale. We need not, for the reasons given, consider the point that fraudulent statements or misrepresentations sufficient to sustain a suit for fraud and deceit were not alleged.

It is argued that the findings that Agatucci was the owner of the stock "at all times between July 20, 1939 and March 11, 1940" is "against the manifest weight of the evidence." The record shows that though a purported assignment was executed by plaintiff to Costabile, defendants dealt with plaintiff as real owner throughout the transaction. It is also contended that the finding that Corradi and Petronio knew the sale was "going through" is "against the manifest weight of the evidence." The South Suburban Safeway Lines in its answer admits that its negotiations were pending "on or about March 11, 1940." There was evidence of conversations with Petronio two or three months prior to the contract between the Companies with respect to its' subject-matter. February 10, 1940, South Suburban Safeway Lines made a written offer to the Chicago Heights Transportation Company, which was received by Petronio. February 24, 1940 a response and counter offer were made on behalf of the Chicago

Heights Transportation Company after a conference between Corradi and an attorney.

The question of manifest weight is not the limit of our inquiry where a master has heard the evidence. We are to decide whether the decree is proper under the law and evidence. *Jones v. Koepke,* 387 Ill. 97. We believe the material conclusions of the master were correct and that sufficient findings were justified, and made, to support the conclusions. We need not consider immaterial findings and conclusions.

Defendants complain that the Chicago Heights Company should have been dismissed from the action. There are no decretal orders against the Chicago Heights Company. When the trial court ruled on the motion the evidence had not yet been taken and it was not clear what the relation of the Chicago Heights Company was in the transactions. We see no merit to defendant's contention.

The agreement to sell the business was between the Chicago Heights Company and the South Suburban Company. The contract payments were to be made to the former. No payments were to be made under the contract to Corradi and Petronio. The decree orders Corradi and Petronio to pay plaintiff and also orders the South Suburban Company to pay him out of the funds in its possession belonging to them. They argue that the money held by the South Suburban Company is not due them, but is due the Chicago Heights Company. They say that plaintiff should properly seek to regain his position as a stockholder, so as to be able to sue the Chicago Heights Company for his share of the proceeds of the sale. They further say that, since plaintiff has abandoned the idea of rescinding the sale, he cannot regain that position. The South Suburban Company is agreeable to paying whomever the court decides.

Corradi and Petronio actually own all of the stock and the Company exists for the purpose only of re-

ceiving payment under the contract. It is true that under the contract in the event of default in payments of monthly "rent", the Chicago Heights Company was to be revested with its certificates of convenience and necessity, etc. This fact is no obstacle to our findings. In arriving at the amount plaintiff recovered, there was deducted the amount of the Company's liabilities as shown by a Bulk Sales Act affidavit made in the transaction. Thus the Company was rendered merely a conduit for the payments to Corradi and Petronio. They say that inquiry at the trial may have disclosed further liabilities of the Company. The record shows they were given an opportunity to make proof of further liabilities but refused to do so.

Corradi and Petronio violated their trust. Had they sold their stock instead of the business to South Suburban Safeway Lines, the decree would properly direct the latter to pay plaintiff the moneys due Corradi and Petronio. The Chicago Heights Transportation Co. in its circumstances should not be permitted to stand between plaintiff and justice. In reality Corradi and Petronio were the Company.

Under these circumstances and all the facts in this case, we agree with plaintiff that no injustice will result to the Chicago Heights Company or to Corradi and Petronio from the execution of the decree as it now stands. We think it is proper under the law and evidence.

For the reasons given the decree is affirmed.

*Decree Affirmed.*

BURKE, J., concurs.

LEWE, J., took no part.