**SPITZ, Plaintiff v. VOLIBAR REALTY COMPANY, a corporation, et al., Defendants.**

Common Pleas Court, Cuyahoga County.

No. 641219.   Decided February 15, 1954.

Jack B. Dworken, Cleveland, for plaintiff.

Hauxhurst, Inglis, Sharp & Cull (Hall Kellog), Harold Ziegler, Baker, Hostetler & Sidlo, H. B. Howell, P. J. Mulligan (Jones.

Day, Cockley & Reavis), Perry L. Graham, Cleveland, for defendants.

## OPINION

By FULTON, J:

Plaintiff since 1951 has been the owner of two $500.00 notes and two shares of stock issued by The Volibar Realty Company.

He brought this action against The Volibar Realty Company, two of its former directors (one since deceased and another under legal disability) and named The Ohio Bell Telephone Company a sub-lessee of the leasehold owned by Volibar as a party defendant.

The action is designated "for accounting, money judgment, injunction, receiver and equitable relief."

In the petition the plaintiff says that the "action is brought on behalf of this plaintiff and all other Shareholders, Unsecured Debenture Noteholders, and Creditors who may wish to join plaintiff in this proceedings." Notwithstanding the quotation from the petition in the next preceding sentence, plaintiff's counsel did not and would not state unequivocally that plaintiff's suit was a derivative action. Never was the statement made that plaintiff as a Shareholder brought this action for the benefit indirectly of all other Shareholders and directly for the corporation and its treasury. To the contrary plaintiff testified that no one joined him in the suit and that he represented only himself.

In view of the foregoing, and since the essential claim was mismanagement of Volibar by two of its former officers and directors, the court might readily take the easy way out by ending the law suit at this point. That might well have been done at the close of the opening statement, at the close of the plaintiff's case, and at the close of the entire case. Since motions made at those respective stages were overruled, good faith on the part of the Court should require some determination of the issues presented by the pleadings.

The Court liberally interpreting the petition, considered that there were other issues than the recovery of money for the benefit of the corporation; and that the case involved a claim of a right to receivership and of an accounting to the plaintiff as an individual from the individual directors Pulliam

and Warner, and from Volibar itself. Confessedly the Court infused the issue of accounting to the plaintiff from the corporation not only by a liberal interpretation of the prayer but by an ungrammatical construction thereof, and all, despite the fact it is commonly stated that the body of a petition and not its prayer determines the nature of the action.

The claims are that the defendant directors Pulliam and Warner mismanaged the company and its property and that present directors (not parties to this action) continue to mismanage the company and its property. There is absolutely no evidence that the present officers and directors of this corporation now are mismanaging or ever did mismanage this company or its property.

As to the former officers and directors it is said that Pulliam charged an unreasonable management fee and that Warner charged exorbitant attorney fees. The charge of $2400.00 per year made by Pulliam is under all circumstances fair and reasonable. It is clear from the evidence that Mr. Pulliam worked hard to "bring this property up." His procurement of The Ohio Bell Telephone Company sub-lease, to this Court, was a lifesaver. His ability with the help of Mr. Warner to procure the consent of the Ohio Bell to a modification of its lease whereby it would assume one-half of the additional taxes charged and assessed by reason of the improvement made by The Ohio Bell Telephone Company results from a stroke of genius.

Certainly no lawyer would say that Warner's retainer of $50.00 per month was exorbitant. His charge for services in reducing the tax valuation, after The Ohio Bell Telephone building was improved, was very wrong, but only because of its extraordinary inadequacy. The Court thinks Mr. Warner charged too little.

Therefore plaintiff as an individual and for and on behalf of other shareholders is entitled to no accounting from the individuals Pulliam and Warner.

Actually the plaintiff does not seek an accounting from the corporation. Assume that he does, the right to such accounting is based upon the fact that the corporation purchased some of its own outstanding notes and shares of stock. The acquisition of the stock was incidental to the acquisition of the notes because when Volibar was organized it issued one note and one share of stock in each unit. Consequently the company was not buying its own shares of stock in violation of any Ohio statute. It acquired shares of stock as it purchased from time to time outstanding notes for about one-third of their face value. As these notes were acquired the

corporation was benefited as were also its outstanding share-holders and other noteholders.

Another complaint arose from the fact that two of the present officers and directors, as well as Mr. Pulliam when he was alive, from time to time also bought these notes and with them incidentally shares of stock. The Court gathers from the greater weight of the evidence that initially Mr. Pulliam sought to find buyers for these notes, because holders wanted to sell them. Mr. Pulliam through his company sought to create a market for the notes. It is true that after the creation of such market certain letters seem to solicit noteholders to sell their notes. On the other hand, the plaintiff admits he did the same thing. His interest was in the acquisition of the corporation or its property because he thought the property was a good investment and he thought the notes and shares were good investments.

There is nothing in the record that entitles the plaintiff to either an injunction or receivership or any other equitable relief.

Plaintiff's case is wrongly premised in two respects: Plaintiff claims that the noteholders own the real estate. Volibar owns the real estate. He also claims that Volibar is trustee for the noteholders. Volibar is the debtor of those noteholders. This claim of Volibar's trusteeship arises from a misinterpretation of the last sentence of the letter of The Union Trust Company addressed to Volibar Realty Company dated May 20, 1931, being found as an exhibit attached to the minutes of the Directors' meeting of May 18, 1931 (Plaintiff's Exhibit "C"). That sentence reads: "Your position in this transaction is accordingly, that of being the representative and trustee for said bondholders, the real parties in interest." Taken in context, the trusteeship there mentioned existed only until the judicial sale of the real estate.

This case probably will be appealed. Its character permits an appeal either on questions of law or on questions of law and fact. As against the possibility that the appeal may be on questions of law only, and for such help as it may be, this Court from a preponderance and the greater weight of the evidence, including the testimony of, as well as a consideration of the witnesses, their manner and demeanor and other qualities bearing upon their credit (not their veracity or honesty) and including a consideration of the exhibits which were studied, the Court finds:

1. The Volibar Realty Co. is a corporation which was organized to salvage the leasehold estates owned by its predecessor.

2. Volibar became and now is the owner of those leaseholds described in the petition.

3. Volibar, as part of its purchase of the leaseholds at judicial sale, or soon thereafter issued to the old bondholders of its predecessor certain debenture notes and shares of stock in the ratio of one $500.00 note for each one share of capital stock.

4. During the period between the order for and the completion of the judicial sale Volibar was trustee for the bondholders of its predecessor; however, said trusteeship terminated upon completion of said sale.

5. The Ohio Bell Telephone Company is owner of, as lessee of, a sub-lease of the premises described in the petition. Beyond this The Ohio Bell Telephone Company has no interest in the premises or in the litigation.

6. Plaintiff is a noteholder and shareholder of the securities issued by Volibar, having purchased these in 1951 as an investment.

7. Plaintiff purportedly, in part, appeared to claim that he represented other shareholders for the benefit of the corporation and its other shareholders—yet by testimony he disclaims that his action was or is representative or derivative.

8. Volibar bought some of its own outstanding notes and with these purchases acquired some of its own shares of capital stock.

9. Some of the officers of Volibar also bought these debenture notes and with them additional stock as part of the unit-purchase.

10. Plaintiff, too, attempted to buy more of these notes since he "figured" their purchase, the leasehold and the property to be a good investment.

11. Pulliam charged $2400.00 per year as management fee.

12. Pulliam succeeded in getting the valuable Ohio Bell Telephone sub-lease.

13. Warner received a retainer as counsel in the amount of $50.00 per month and charged an additional nominal fee only for bringing about a reduction in tax valuation in the amount of approximately $400,000.00.

14. There was paid a real estate commission fee of $12,500.00 to a broker and an additional fee of $6500.00 to an attorney not otherwise identified with Volibar or its property in connection with the negotiations for and consummation of The Ohio Bell sub-lease.

15. Hostetler and Prior, against whom complaints are made, are not parties to the suit; and besides no mismanagement against them was proven.

Upon the foregoing findings the Court now concludes:

1. Volibar was not and is not trustee for the debenture noteholders—except during the limited period set forth in the findings.

2. The debenture noteholders do not own the leasehold.

3. Volibar owns the leasehold.

4. The Ohio Bell Telephone Company owns the sub-leasehold.

5. Plaintiff's case is not a derivative action for the benefit of the corporation or its shareholders.

6. Plaintiff's action is for himself.

7. The purchase by Volibar of its .outstanding notes and with them incidental shares of its capital stock benefited the company and violated no law, statutory or otherwise.

8. The purchase of notes by former officers and present officers was no part of any scheme or conspiracy to injure the noteholders or anyone else.

9. There was no scheme participated in, by conspiracy or otherwise, by the parties to the suit to injure plaintiff or other noteholders or shareholders.

10. Neither Pulliam nor Warner, nor anyone else were guilty of any mismanagement or of any overcharging the company for services.

11. The Ohio Bell Telephone sub-lease was a great benefit to the corporation.

The decree, finding, and judgment, with costs assessed against plaintiff, is for defendants—all, each and every    A Journal Entry shall be prepared including specifically the foregoing findings and conclusions together with exceptions to all parties.