**SPITZ, Plaintiff-Appellant, v. VOLIBAR REALTY COMPANY, a Corporation et, Defendants-Appellees.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 23201. Decided November 28, 1956.

Morton R. Dworken, Charles Miller, for plaintiff-appellant.
Baker, Hostetler & Patterson, Harold O. Ziegler, for defendants-appellees.

## OPINION

By SKEEL, J:

This appeal comes to this Court on questions of law and fact from a decree for the defendants in the Common Pleas Court of Cuyahoga County. The plaintiff's action was designated "Petition for Accounting, Money Judgment, Injunction, Receiver and Equitable Relief." The petition alleges that the plaintiff and defendants, Pulliam and Warner, are creditors, stockholders and Unsecured Debenture Note-holders of said corporation (The Volibar Realty Co.). It is alleged that defendants, Pulliam and Warner, have been for many years President and Secretary and Directors of The Volibar Realty Company and have had complete management of the company's affairs and of all its assets and have proceeded in the use of its assets as if they were the sole owners and that "said President and Secretary have jointly and without legal authority refused to properly take care of the business of said corporation, contrary to the best interests of the Stockholders and Creditors of said corporation."

Paragraph five of the petition provides that:

"That there was outstanding and due to the Creditors of this corporation a series of Unsecured Debenture Notes in the amount of One Hundred Eighty Thousand Five Hundred Dollars ($180,500.00); that said notes continued to be outstanding from June 1, 1931, and that approximately One Hundred Fifty Thousand Dollars ($150,000.00) of said notes are still unpaid and outstanding; that said notes were issued as evidencing the principal due and unpaid on certain defaulted first mortgage lease-hold bonds which said notes were assumed by this defendant corporation."

It is further alleged that for several years there has been sufficient money in the treasury from income to pay dividends on the company stock and on the notes still outstanding but that the President and Secretary, acting for their own purposes, have used corporate funds to buy outstanding "notes and shares" of the corporation for one-third of the face value, the purpose being to force noteholders and shareholders to dispose of their stock and notes at a sacrifice, using the corporation money to purchase such holdings and pretending to act for the benefit of the corporation by putting said notes and shares in the treasury of the corporation. That noteholders have become dissatisfied with waiting since 1931 for dividends and have disposed of their notes and shares to defendants President and Secretary (defendants herein) who paid for same with corporation funds, it being the purpose of the President and Secretary and "their clique, consisting of some of their friends and buddies who were Noteholders and Stockholders to become the sole owners of the corporation and thus acquire the leasehold which is of great value of more than one-half Million Dollars for approximately Fifty to Seventy Five Thousand Dollars ($50,000 to $75,000), not with their own money but with the corporate moneys which should have been distributed to the Stockholders and Noteholders of said corporation."

The petition further alleges that the President and Secretary have paid themselves excessive salaries, have not acted in good faith in

handling the funds of the corporation and that it is necessary that they be removed and a receiver be appointed to conserve the assets of the company. That unless the officers be restrained, they will continue to acquire stock and Unsecured Debenture Notes with corporate funds. That already $25,000 has been illegally spent to acquire such shares and notes.

It is alleged that many of the shareholders cannot be reached, their places of residence being unknown or that the shares and notes have been transferred or passed to persons unknown and that this action is brought in behalf of the plaintiff and others who wish to join with him and that he has no adequate remedy at law. That the assets of the corporation are less than sufficient to pay all creditors and noteholders and unless a receiver is appointed to take possession of the assets and a restraining order granted preventing the defendants from proceeding with the business of the corporation, said assets will be lost to the plaintiff, and because the President and Secretary "are the main chief defendants" it would be a vain thing to ask them to bring this action on behalf of the defendant corporation.

The plaintiff prays for an accounting of funds misappropriated in derogation of the rights of the plaintiff, stockholders, creditors and Unsecured Debenture Noteholders; that a receiver be appointed to take charge of the assets of the corporation; that all stockholders, creditors and Unsecured Debenture Noteholders be restored to everything they have lost by reason of the acts of Pulliam and Warner; that the assets of the corporation be sold and distributed among the shareholders and Unsecured Debenture Noteholders; that plaintiff be awarded costs and attorney fees and such other equitable relief as may be proper in the premises.

Each of the defendants filed an answer by which the following facts are admitted; that the defendant, The Volibar Realty Company, is a corporation organized under the laws of the State of Ohio and that at the time the plaintiff's petition was filed, Lonnie N. Pulliam was President and a Director and Dorr E. Warner was Secretary and a Director; that both, as was plaintiff, were stockholders and owners of Unsecured Debenture Notes. The lease to the Ohio Bell Telephone Company is likewise admitted; also it is admitted that in June 1931, the company issued a series of Unsecured Debenture Notes in the principal amount of $180,500.00 in exchange for and to evidence the principal due and unpaid of a series of defaulted seven per cent mortgage leasehold gold bonds of the Bolivar Ninth Company which were secured by a lien on the leasehold purchased by this corporation at foreclosure sale for the benefit of said bondholders and that the company has purchased from owners of such Unsecured Debenture Noteholders $38,000 worth in principal amount due, plus interest then due for $13,925, and placed them in the treasury of the company to the great benefit and advantage of the company, its stockholders and the owners of the remaining Unsecured Debenture Notes of the total face value of $142,500. It is admitted that no payments on principal have been made on said Unsecured Debenture Notes but alleges that by the terms of the note, payment is to be made

only out of available monies after all current obligations and expenses have been fully paid as determined by the Board of Directors consistent with the best interests of the company and that no money has ever been available for that purpose. It is also admitted that each noteholder also received one share of capital stock of the company for each $500 note and that when the company purchased the Unsecured Debenture Notes as admitted, it also received with each purchase transaction one share of stock for each $500 note purchased and that 76 shares of its capital stock thus received is now held in the treasury of the company with the said Unsecured Debenture Notes.

The defendants admit receiving some compensation and fees for services rendered but allege all such payment to have been reasonable and legally received and further allege that they have served the best interests of the company. All of the other allegations of the petition are denied.

Before trial in the Common Pleas Court certain stipulations of fact were agreed to with the reservation that each party could object to the relevance of any of the facts in the agreed stipulations. Among other things, the stipulations of fact provide: That the plaintiff is the owner of a $1,000 Unsecured Debenture Note of the defendant corporation as well as two shares of non-assessable no par stock. That he became the purchaser of the note and stock September 4, 1951. That the Volibar Realty Company was formed in 1931, the charter authorizing 370 shares of no par value stock. That the corporation was authorized to start business with $500 capital. The original shareholders paid $1.36 per share, totaling $503.20, George N. Sherwin becoming the owner of 124 shares and L. C. Gelger and Grover H. Hull each becoming the owner of 123 shares. The corporation was formed to bid in the assets of the Bolivar Ninth Company on behalf of the bondholders (a leasehold estate in the Winton Garage on Bolivar Road in Cleveland), it having defaulted on an issue of $180,500 seven per cent first mortgage leasehold gold bonds. There was then over $12,000 of interest in default.

Paragraph 7 of the agreed stipulations of fact provide:

"7. The Volibar Realty Company was the successful bidder at the foreclosure sale and purchased for the aforesaid bondholders the leasehold property in question under the order of sale. Pursuant to its proposal, The Union Trust Company delivered to said Corporation defaulted bonds of The Bolivar-Ninth Company aggregating $180,500 in unpaid principal amount and $12,309.23 in interest. In exchange therefor and to evidence the principal due and unpaid on said defaulted bonds The Volibar Realty Company issued as of June 1, 1931, and delivered to the bondholders a series of its Unsecured Debenture Notes in the aggregate principal amount of $180,500. The Noteholders also received in connection therewith one (1) share of fully paid, non-assessable no par stock of said Corporation for each $500 in principal amount of said Notes, or a total of 361 shares of its capital stock."

A copy of the Unsecured Debenture Notes issued and distributed to the first mortgage gold bondholders of the Bolivar Ninth Company as shown by paragraph nine as set forth in the agreed statement of facts contains the following clause:

"This note is one of a series of notes of like tenor, effect and date, aggregating one Hundred and Eighty Thousand Five Hundred Dollars ($180,500.00). All Notes of this series are issued for the purpose of evidencing the principal due and unpaid on the defaulted First Mortgage Leasehold 7% Gold Bonds of The Bolivar Ninth Company which were deposited with the Union Trust Company and which were secured by a lien on the leasehold estate purchaser at foreclosure sale by The Volibar Realty Company for the aforesaid bondholders."

Paragraph Eleven and Twelve of the agreed stipulations of fact sets forth that on December 31, 1952, $180,500 in principal amount of the Unsecured Debenture Notes and accrued interest in the amount of $218,856.25, making a total of $399,356.25 was then due and unpaid and that $38,000 of the Unsecured Debentures Notes on which $46,075 interest had accrued (which The Volibar Realty Company had purchased at different times between July 28, 1948 and May 5, 1952 for a total of $13,925.00) was held in the treasury of Volibar, together with 76 shares of no par value stock which was transferred to the Company as an incident of the purchase of the notes.

The leasehold estate of The Volibar Realty Company in 1947 was sub-leased for twenty years with extension privileges to The Ohio Bell Telephone Company at a rate of $40,000 per year, plus one-half of the increased taxes due to improvements. The sub-lessee has made substantial improvements and additions at its expense. That after this lease was negotiated, the Board of Directors gave a management contract with Pulliam and Pulliam (consisting of L. R. Pulliam, President of the Company, and his son, R. W. Pulliam) at the rate of $2400.00 per year, amounting to $12,000 in five years and certain other service and legal fees were granted to Dorr Warner, Secretary of the Company.

Upon trial, other evidence was introduced which, together with the stipulations of fact, has been presented to this Court as the evidence and facts upon which this Court is to try the issues presented on this law and fact appeal.

The plaintiff in argument and by his brief limits the issues to be tried on this appeal as follows:

"(1) Are those securities, purchased with $13,925.00 or more of corporate funds, credit obligations (debt instruments) of the Volibar Realty Company, or is their legal status that of investment certificates in the nature of interest bearing preferred stock?

"(2) If the securities purchased with the cash assets of the corporation are not evidence of indebtedness, are these expenditures illegal?

"(3) May an officer-director of a corporation expend corporate monies in the purchase of its securities, to be held as treasury shares when the effect of such purchasers is to place majority control and virtual ownership of the corporation in a syndicate composed of the officer directors?"

It is clear from the foregoing detailed statement of the allegations of the pleadings that there are no facts pleaded upon which these claims could be founded. Likewise, it is disclosed by the record that these claims were not presented to the trial court.

A party cannot completely abandon the issues tried in the trial court and seek to try an entirely different case, seeking different relief in a trial de novo in a reviewing court. The claim that the "Unsecured Debenture Notes" as they were described in the plaintiff's petition as the basis of plaintiff's action, and as they were clearly stipulated to be in the stipulations of fact, are now, according to the plaintiff, to be known as preferred stock for the purpose of this appeal. Such a complete change of the issues cannot be made in the same action on appeal on law and fact. The plaintiff is bound by the facts pleaded and agreed to in the stipulations of fact and a completely new claim contradictory to that presented in the court of original jurisdiction cannot be tried for the first time in a reviewing court. **Barnes v. Christy, 102 Oh St 160, at page 170**, 131 N. E. 360.

If the first contention or issue presented by the plaintiff that the Unsecured Debenture Notes of The Volibar Realty Company are in fact certificates of preferred stock were to be considered by this Court on the record, the decree would have to be for the defendants. The allegations of the plaintiff's petition and the agreed stipulations of fact completely contradict such contention. It is true that the character of an instrument, where the issue is properly raised, is to be determined by its content rather than what it is designated to be on the face of the instrument. But where the character of the instrument is alleged as a fact in the petition and is there described by the pleader to represent a debt of a defendant and where by the agreed stipulations of fact entered into as evidence in the case to support the claims of the pleader, the character of the instrument is described and designated as representing a debt of the defendant corporation, the pleader is bound by his petition and the proof agreed upon and cannot subsequently attempt to make a contrary claim as to the character of such instruments. Here the plaintiff based his right to bring this action on the fact that he was the owner of the $1,000 Unsecured Debenture Note and was, therefore, a creditor of the Volibar Realty Company. Many places in his petition, the allegation that such notes are debts of the Company, is asserted as a fact and the stipulations of fact assert that such fact is not in dispute. The plaintiff cannot completely reverse his field and claim the Unsecured Debenture Notes of the Volibar Realty Company to be preferred shares of stock.

This action is one in equity. The plaintiff seeks to require the defendants to account to the Volibar Realty Company and reimburse it for the assets claimed to have been unlawfully expended in purchasing its own Unsecured Debenture Notes in the face amount of $38,000 for which $13,925.00 was expended. The holders and owners of the notes sold to Volibar were strangers to the parties in this action, they receiving the compensation paid and there is no evidence that Volibar's officers benefited in any way by the purchase different from the benefits that all stockholders of the Company received by reason of these transactions. There is some evidence that Volibar was in fact substantially benefited by becoming the owner of these notes. To require the defendants to reimburse the corporation for the monies expended where there has been no loss caused by the transaction would violate basic principles of equity. He who seeks equity must do equity.

We find no merit or evidence to support plaintiff's third claim set out above or the right of the plaintiff under the allegations of the petition to seek relief in equity thereon, the claim being that officers "placed majority control and virtual ownership of the corporation in a syndicate composed of the officer-directors" by acquiring treasury shares of stock with the use of corporation funds. The stock referred to is that acquired as an incident to the purchase by the Company from owners not identified with management of its Unsecured Debenture Notes in the face value of $38,000 for a total consideration of $13,925.00. By the purchase of these notes for one-third their face value, to say nothing of the then accrued interest of $42,000, Volibar received seventy-six shares of its no par value stock formerly held by the sellers of the Unsecured Debenture Notes. Whether the reduction of the outstanding no par value stock from 361 shares to 285 shares had any effect on controlling the election of directors is not disclosed by the evidence. The management of this Company has not changed materially since 1943. Mr. L. R. Pulliam, members of his family and associates assumed the burden of attempting to work out its affairs almost from the very beginning and so far as the record is concerned, no stockholder has ever attempted to vote the present management of the company out of office. There is no evidence which in the slightest degree challenges the legality of the incidental acquiring by the company the stock in question as a part of the purchase or compromise of debts owned by it. This claim is overruled.

For the foregoing reasons, a decree may be entered for the defendants.

KOVACHY, PJ, HURD, J, concur.