359 S.E.2d 599

**David Brent BAILEY, et al.**

v.

**Dennis R. VAUGHAN, Jr., etc., et al.**

**No. 16970.**

Supreme Court of Appeals of West Virginia.

July 22, 1987.

Steven L. Miller, Cross Lanes, for appellants.

Lee O. Hill, James R. Snyder, Jackson, Kelly, Holt & O'Farrell, Charleston, for Vaughan.

John A. Rollins, Charleston, for Merrill Lynch.

Mario J. Palumbo, Love, Wise, & Woodroe, Charleston, for Centurion Corp.

MILLER, Justice:

■ This appeal requires us to consider whether the director of a corporation has a fiduciary duty to disclose material information affecting the value of the stock when purchasing stock from a minority stockholder. The circuit court granted summary judgment in favor of the corporate director on the ground that no legal duty exists requiring the disclosure of information to a shareholder.[1] Because we believe that in special circumstances the common law of this State should recognize a fiduciary duty to disclose material information, we reverse the judgment of the circuit court and remand the case for further proceedings.

The plaintiffs, former minority shareholders in the Citizens National Bank of St. Albans (CNB), brought this action in the Circuit Court of Kanawha County against Dennis R. Vaughan, Jr., an officer and director of CNB, to whom they had sold 1,200 shares of CNB stock. The stock was purchased for $20 per share on November 29, 1982, with Merrill Lynch Pierce Fenner & Smith, Inc. (Merrill Lynch), acting as the agent and broker for the undisclosed principal, the defendant Vaughan.

The plaintiffs alleged in their initial complaint that the Kanawha Valley Bank, or a parent or subsidiary corporation thereof,

---

1. The defendant, Dennis R. Vaughan, Jr., filed a motion to dismiss the complaint for failure to state a claim upon which relief could be granted and subsequently filed a motion for summary judgment. The circuit court treated the motion. to dismiss as having been incorporated into the motion for a summary judgment and ordered the complaint and amended complaint dismissed with prejudice.

had offered to purchase CNB stock for $25 per share and that Centurion BanCorp, Inc. (Centurion) had made an offer of $30 per share prior to the time they sold their stock to the defendant Vaughan. The plaintiffs alleged in their amended complaint that Vaughan had breached a fiduciary duty he owed them by not disclosing that negotiations were in progress for the sale of CNB to Centurion. They also alleged that Vaughan had knowledge of negotiations and offers to purchase because of his position as a director of CNB and that this information was not known to the general public nor by them.[2] Merrill Lynch and Centurion were also named as defendants.[3]

During the proceedings below, the plaintiffs took the deposition of Elmer Burton Gunter, senior vice president of CNB, who stated that One Valley Bancorp had expressed interest in acquiring CNB after the enactment of new banking legislation. CNB had supplied that bank with the financial information it had requested by some time in October or in the first two weeks of November, 1982. He also stated that Centurion by some time between November 15, 1982, and December 20, 1982, had also expressed some interest in acquiring CNB and had sent its representatives for exploratory discussions.

An affidavit by Charles F. Dodrill, the executive vice president of CNB, reveals that in April of 1982, One Valley Bancorp had expressed interest orally and in writing of an affiliation with CNB. This was followed with a request by One Valley Bancorp for certain information from CNB between October 18, 1982, and November 15, 1982. Mr. Gunter, in his deposition, admitted knowledge of the April, 1982 communications with One Valley Bancorp. He also indicated that this information would have been shared with the other directors at their next monthly board meeting.

The defendants filed several affidavits from banking officials indicating that no offers to purchase CNB had been made until after the time the plaintiffs sold their stock to the defendant Vaughan. This was also confirmed by Mr. Gunter in his deposition.

In February, 1983, CNB announced to its stockholders that Centurion had offered to purchase CNB stock for $30 per share. This offer was approved and accepted in July, 1983. The plaintiffs instituted this action in early November, 1983, which resulted in the adverse judgment now on appeal.

The defendant Vaughan argues that under West Virginia law, a corporate director or officer owes no fiduciary duty to disclose insider information to a minority shareholder about negotiations or an offer to sell the corporation, unless the purchaser inquires about such information. He contends the only duty owed in this situation is to refrain from making material misrepresentations of facts amounting to fraud or deceit, citing *Staker v. Reese*, 82 W.Va. 764, 97 S.E. 641 (1918), and *Poole v. Camden*, 79 W.Va. 310, 92 S.E. 454 (1916).

We acknowledged in *Poole* that "all authorities agree that where a director misrepresents material facts peculiarly within his knowledge as a corporate officer," he may be held liable. 79 W.Va. at 317, 92 S.E. at 457. This point is summarized in 18B Am.Jur.2d *Corporations* § 1809 at 661 (1985):

> "If there is any actual fraud on the part of the director or officer, the stockholder induced thereby to sell his stock to such director or officer is entitled to relief as in other cases of fraud. In a number of cases, the fact that the purchaser of stock is a director or officer of the corporation, together with the fact that misrepresentations or a partial disclosure only concerning the stock is

---

**2.** The plaintiffs also alleged that Vaughan's non-disclosure of material insider information constituted an unlawful, fraudulent, or prohibited practice within the meaning of the Uniform Securities Act, W.Va.Code, 32-1-101, *et seq.* The trial court did not address this theory of

relief and, therefore, we do not address this issue.

**3.** The claim for injunctive relief against Centurion was dismissed as moot without objection prior to the entry of the summary judgment for the defendant Vaughan.

made, has been deemed to constitute a fraud justifying relief." (Footnotes omitted).

*See generally* 3A W. Fletcher, Cyclopedia of the Law of Private Corporations § 1172 (1986). It appears that both *Poole* and *Staker* were decided on this ground, as in each case the director was asked about the financial affairs of the corporation and gave misleading information.

In *Poole*, the defendant was a director, treasurer, and officer of a railroad company who had employed a stockbroker as his "secret agent" to offer $175 per share in the railway company. A representative of the stockholder then went to the director and sought full information in regard to the value of the stock. According to the plaintiff's representative, the defendant made a number of inaccurate and misleading representations designed to minimize the growth and profitability of the company. He also indicated a desire to acquire a controlling interest in the company, when in fact he and his associates already were in control of the corporation's operations. We concluded the trial court was correct in rescinding the sale and stated in Syllabus Points 3 and 4:

"3. The relationship of a director to stockholder in a corporation is not of that strict fiduciary character as to preclude him as a matter of law from purchasing the shares of stock of such stockholder without incurring the penalty of having the sale set aside at the election of the stockholder, regardless of the facts and circumstances of the transaction.

"4. But a director or managing officer of a corporation does sustain such fiduciary relationship to a stockholder of a corporation, as to require of him when proposing to purchase his stock, and he is called upon for information as to the property and financial condition of the corporation, and its plans and purposes for the future, and for all other facts affecting the value of such stock, and if he offers his opinion thereon, and undertakes to give some information peculiarly within his knowledge as such director or officer, he is bound at his peril, and upon penalty of having the sale rescinded, to give full and correct information and to withhold nothing from such stockholder affecting the value of his shares." [4]

In *Staker*, we applied the rule against affirmative misrepresentations where a managing officer of a corporation had concealed the fact that a sale was pending and held in Syllabus Point 1:

"Where the managing officer of a corporation, with full knowledge that a sale of the assets thereof is about to be consummated, approaches one of the stockholders, who is also a director of such corporation, for the purpose of purchasing his stock, and upon inquiry informs such owner that there are no such negotiations pending or contemplated, and relying upon this statement, and in ignorance of such contemplated sale of the corporate assets, the owner of the stock parts therewith for a sum grossly less than its actual value as measured by the price at which such assets are being sold, the purchaser is guilty of fraud and deceit, which will sustain a civil action for the recovery of damages."

The defendant contends, based on *Staker*, that since there was no inquiry by the plaintiff stockholder, there is no liability since the defendant did not make any misrepresentations as in *Staker* and *Poole*. However, the misrepresentation brings about a fraud or deceit issue which, as we pointed out in *Poole*, all courts recognize as generating a cause of action. Here, the issue is whether the specialized knowledge

---

4. While *Poole* did not stress the point, the involved director had solicited the purchase of the stock. The Massachusetts Supreme Court in *Goodwin v. Agassiz*, 283 Mass. 358, 186 N.E. 659 (1933), held that this factor of a director soliciting the purchase was an important consideration and gave rise to a duty of fair disclosure: "Therefore, where a director personally seeks a stockholder for the purpose of buying his shares without making disclosure of material facts within his peculiar knowledge and not within reach of the stockholder, the transaction will be closely scrutinized and relief may be granted in appropriate instances." 283 Mass. at 363, 186 N.E. at 661. (Citations omitted). *See also Agatucci v. Corradi*, 327 Ill.App. 153, 63 N.E.2d 630 (1945).

of a potential purchase by One Valley Bancorp alleged to be known to the defendant director was required to be disclosed by him.

Some confusion exists in this area of a director's liability for purchasing stock from shareholders by virtue of the propensity of textwriters to segregate the cases into what are termed "majority" and "minority" rules and a third category termed the "special facts or circumstances" rule. *See* 3A W. Fletcher, Cyclopedia of the Law of Private Corporations §§ 1168.1, 1168.2 & 1168.3 (1986); 2 F. O'Neal, Close Corporations § 8.15 (2d ed. 1971). Under this methodology, the majority rule is stated in terms that a director or officer of a corporation has no duty, in purchasing shares of a stockholder, to disclose information that he has gained in his position which is unknown to the shareholder and which would increase the value of the shares to be purchased.[5]

The minority rule is cast as holding that the director or officer has a duty to disclose all information which he may possess which may increase the value of the shares to be purchased.[6] The special facts or circumstances rule holds that the director or officer is required to disclose those facts or circumstances of which he is aware that would increase the value of the shares he intends to purchase.[7]

When these cases are closely analyzed, it is apparent that there is considerably less dichotomy of view. When we turn to the majority rule, we find that the cases cited for this rule often involve situations where there has been no inside or special information obtained which would influence the value of the shares purchased. Consequently, the court finds no impediment to the purchase, but it is difficult to conclude that the court intends to create a per se rule of no liability as there is often some limiting language. Included in this group are cases which have apparently been moderated by later decisions. We come to the conclusion that there is presently no majority rule that enables a director to utilize insider information which points to substantial undervaluation of the corporate shares and then to purchase shares from an uninformed shareholder without any liability.[8]

---

5. *See, e.g., Seestedt v. Southern Laundry, Inc.,* 149 Fla. 402, 5 So.2d 859 (1942); *Hooker v. Midland Steel Co.,* 215 Ill. 444, 74 N.E. 445 (1905); *Ace Development Co. v. Harrison,* 196 Md. 357, 76 A.2d 566 (1950); *Boss v. Boss,* 98 R.I. 146, 200 A.2d 231 (1964). *See generally* 3A W. Fletcher, Cyclopedia of the Law of Private Corporations § 1168.1 (1986); 2 F. O'Neal, Close Corporations § 8.15 (1971).

6. *See, e.g., Haussler v. Wilson,* 164 Cal.App.2d 421, 330 P.2d 670 (1958); *King Mfg. Co. v. Clay,* 216 Ga. 581, 118 S.E.2d 581 (1961); *Blakesley v. Johnson,* 227 Kan. 495, 608 P.2d 908 (1980); *Weatherby v. Weatherby Lumber Co.,* 94 Idaho 504, 492 P.2d 43 (1972); *see generally* 3A W. Fletcher, Cyclopedia of the Law of Private Corporations § 1168.2 (1986); 2 F. O'Neal, Close Corporations § 8.15 (1971). Fletcher cites both *Poole* and *Staker* as minority rule cases, but as we have previously noted, they involved material misrepresentations by the purchasing director to the shareholder and thus are affirmative fraud cases. Also included in Fletcher's minority rule is *Bank of Mill Creek v. Elk Horn Coal Corp.,* 133 W.Va. 639, 57 S.E.2d 736 (1950), but this case turned on a fiduciary duty resulting from an attorney-client relationship. There, the attorney had purchased his client's trust property, i.e., voting trust certificates.

7. *See, e.g., Strong v. Repide,* 213 U.S. 419, 29 S.Ct. 521, 53 L.Ed. 853 (1909); *Hobart v. Hobart Estate Co.,* 26 Cal.2d 412, 159 P.2d 958 (1945); *Katz Corp. v. T.H. Canty & Co., Inc.,* 168 Conn. 201, 362 A.2d 975 (1975); *Lank v. Steiner,* 43 Del.Ch. 262, 224 A.2d 242 (Del.1966); *Goodwin v. Agassiz, supra; Buckley v. Buckley,* 230 Mich. 504, 202 N.W. 955 (1925); *Saville v. Sweet,* 234 App.Div. 236, 254 N.Y.S. 768 (1932), *aff'd,* 262 N.Y. 567, 188 N.E. 67 (1933); *see also Diamond v. Oreamuno,* 24 N.Y.2d 494, 301 N.Y.S.2d 78, 248 N.E.2d 910 (1969); *Lazenby v. Godwin,* 40 N.C.App. 487, 253 S.E.2d 489 (1979); *Binns v. Copper Range Co.,* 335 Pa. 257, 6 A.2d 895 (1939); *Nichol v. Sensenbrenner,* 220 Wis. 165, 263 N.W. 650 (1935); Annot., 7 A.L.R.3d 500 (1966). *See generally* 3A W. Fletcher, Cyclopedia of the Law of Private Corporations § 1168.3 (1986); 2 F. O'Neal, Close Corporations § 8.15 (1971).

8. As to the majority cases cited by Fletcher and contained in note 5, *supra,* in *Seestedt,* there was no claim of insider information, but rather a question of whether a stockholder purchase was made for the benefit of an officer or the corporation. The court in *Hooker* recognized that fraud would vitiate the sale, but found the shareholder was offered the right to rescind the sale and refused to do so whereupon the court

Furthermore, it appears that the distinction between the minority rule and the special circumstances rule is shadowy at best. In order for the director to be liable under either rule, it must be shown that he possessed some special knowledge not available to the shareholder which enabled him to purchase the stock at a price that was lower than its actual value. Thus, it is this enhanced knowledge of the increased value which he has failed to disclose that underlies both theories of liability. We are aware of no minority view case that erects a per se rule against the purchase by a director or officer of another stockholder's shares.

Typical of cases cited for the minority view are *Weatherby v. Weatherby Lumber Co.*, 94 Idaho 504, 492 P.2d 43 (1972), and *Blakesley v. Johnson*, 227 Kan. 495, 608 P.2d 908 (1980). In *Weatherby*, the director of a corporation was aware of the potential sale of the corporation to another company which would enhance its stock value. Without disclosing this information to the shareholder, he bought his stock at a reduced price when considered in light of the prospective sale. The Idaho court after stating he had a duty to disclose this information permitted the shareholder to recover damages for the difference in value. Obviously, the issue could also have been resolved in the same fashion under the special circumstances rule.

In *Blakesley*, the majority owner arranged to purchase the minority shareholder's stock and informed him that the corporation would be sold to a third party, but did not accurately inform him of that sales price. As a result, the minority shareholder received a lower price. The Kansas court concluded that the majority owner was required to disclose this information. Again, a special circumstances rule would have also covered this situation.

denied relief. *Ace Development Co.* did not involve a stock purchase by a director and its dictum was "a director ... may, in good faith, buy stock of his corporation." 196 Md. at 365–66, 76 A.2d at 570. It must also be read in light of *Toner v. Baltimore Envelope Co.*, 304 Md. 256, 498 A.2d 642 (1985), which recognizes a fiduciary responsibility by directors to minority shareholders. *Boss* only recognizes that directors are not per se disqualified to buy stock and quoted from *DuPont v. DuPont*, 256 F. 129, 133 (3d Cir.1919), that such disability "must be found, if it exists, in the fact that they made some wrongful use of their position."

We are persuaded, upon closer examination of other "majority" rule cases cited by Fletcher that they do not stand for a per se rule that a director is never required to disclose insider information. Several cases involve affirmative misrepresentations by the director, a situation in which all courts agree a recovery is permissible under a fraud theory. *E.g., Steinfeld v. Nielsen*, 15 Ariz. 424, 139 P. 879 (1913); *Llewellyn v. Queen City Dairy*, 187 Md. 49, 48 A.2d 322 (1946). Others involve transactions in which the director has knowledge of information which is unknown to the shareholder, but the information was not derived from his position as a corporate insider and no liability is found. *E.g., Equity Corp. v. Milton*, 42 Del.Ch. 425, 213 A.2d 439 (1965), *aff'd*, 43 Del.Ch. 160, 221 A.2d 494 (Del.Super.1966); *Stout v. Cunningham*, 33 Idaho 464, 196 P. 208 (1921). Other cases refused to recognize a breach of fiduciary duty where the director acts upon information obtained through his corporate relationship, but the information is equally open and accessible to the shareholder. *E.g., Western Grain Co. Cases*, 264 Ala. 145, 85 So.2d 395 (1955); *Manning v. Wills*, 193 Ga. 82, 17 S.E.2d 261 (1941); *Waller v. Hodge*, 214 Ky. 705, 283 S.W. 1047 (1926); *Schuur v. Berry*, 285 Mich. 654, 281 N.W. 393 (1938); *Seitz v. Frey*, 152 Minn. 170, 188 N.W. 266 (1922). Many of the cases cited simply restate the general proposition of the "majority" rule in an unrelated context and are, therefore, dictum. *E.g., Gardner v. Baldi*, 24 N.J.Super. 228, 93 A.2d 644 (1952) (motion for award of attorney's fees); *Rucker v. Sanders*, 182 N.C. 607, 109 S.E. 857 (1921) (suit for specific performance of contract); *Spitz v. Volibar Realty Co.*, 121 N.E.2d 325 (1954), *aff'd*, 138 N.E.2d 438 (Ohio App.1956) (shareholder derivative suit); *Guaranty Laundry Co. v. Pulliam*, 198 Okl. 667, 181 P.2d 1007, 2 A.L.R.2d 738 (1947) (suit challenging validity of shareholders' agreement).

When some of these courts have specifically addressed the question of director liability, it has been the consensus that the director is not cloaked with immunity, but may be held liable under an analysis similar to that of a "minority" and "special circumstances" rule. *E.g., Grant v. Winstead*, 476 So.2d 36 (Ala.1985); *King Mfg. Co. v. Clay, supra; Buckley v. Buckley, supra; B. & S. Rigging & Erection, Inc. v. Wydella*, 353 N.W.2d 163 (Minn.App.1984); *Doyle v. Union Ins. Co.* 202 Neb. 599, 277 N.W.2d 36 (1979); *Konsuvo v. Netzke*, 91 N.J.Super. 353, 220 A.2d 424 (1966); *Lazenby v. Godwin, supra; Klein v. Fisher Foods, Inc.*, 6 Ohio Misc. 84, 216 N.E.2d 647 (1965). Clearly, both Delaware and Idaho now impose an obligation to disclose insider information. *See* notes 6 and 7, *supra.*

Not only have we recognized in Syllabus Point 3 of *Poole* that a director has some fiduciary duty toward the shareholders, but we have extended it in later cases. Thus, in *Meadows v. Bradshaw-Diehl Co.*, 139 W.Va. 569, 580, 81 S.E.2d 63, 69 (1954), we made this general statement:

> "Certainly the owners of the majority of shares of the corporation occupy the position of fiduciary for the minority stockholders. *Southern Pac. Co. v. Bogert,* 250 U.S. 483, 39 S.Ct. 533, 63 Law Ed. 1099 [ (1919) ]. The same rule has been applied in this jurisdiction' as to officers and directors of a corporation occupying a fiduciary relationship in relation to the stockholders. *Chounis v. Laing,* 125 W.Va. 275, 23 S.E.2d 628 [ (1942) ]; *Felsenheld v. Tobacco Co.,* 119 W.Va. 167, 192 S.E. 545 [123 A.L.R. 334 (1937) ]; *Staker v. Reese,* 82 W.Va. 764, 97 S.E. 641 [ (1918) ]. But no violation of such duty is shown in this instance."

We utilized the teachings of *Meadows* to establish Syllabus Point 2 of *Masinter v. Webco Co.*, 164 W.Va. 241, 262 S.E.2d 433 (1980):

> "While the officers and directors of a business corporation are accorded a rather broad latitude in the conduct of the affairs of the corporation, they occupy a fiduciary relationship toward it and its shareholders. The same fiduciary relationship exists on the part of the majority shareholders of a business corporation toward its minority shareholders."

In Syllabus Point 3 of *Masinter,* we also recognized that: "A violation of the fiduciary relationship may result from oppressive conduct, which is conduct that departs from the standards of good faith and fair dealing which are inherent in the concept of a fiduciary relationship."

From the foregoing law, we are drawn to the conclusion that a director, who solicits a shareholder to purchase his stock and fails to disclose information not known to the shareholder that bears upon the potential increase in value of the shares, shall be liable to the shareholder either to have the sale rescinded or to respond in damages.[9]

In the present case, we believe summary judgment was inappropriate. There were at least some facts pointing to the conclusion that the defendant may have possessed special information as a director that a potential enhancement would occur in the value of the CNB shares through a possible takeover by One Valley Bancorp. Viewing the facts in the light most favorable to the plaintiffs, the defendant may well have had a fiduciary duty to make full disclosure and, therefore, the defendant was not entitled to summary judgment as a matter of law. The fact that there was no firm offer made by One Valley Bancorp before the defendant purchased the plaintiffs' shares is not dispositive of the case. It may well be that if the only evidence the plaintiffs could muster at trial was the summary judgment record now before us that the trial court would be warranted in directing a verdict for the defendant, but as we pointed out in Syllabus Point 1 of *Masinter:*

> "Even if the trial judge is of the opinion to direct a verdict, he should nevertheless ordinarily hear evidence and, upon a trial, direct a verdict rather than try the case in advance on a motion for summary judgment."

For the foregoing reasons, we reverse the summary judgment and remand the case for further proceedings not inconsistent with this opinion.

Reversed and Remanded.

Justice Brotherton, deeming himself disqualified, did not participate in the consideration or decision of this case.

---

9. Where corporate stock is publicly traded, the provisions of the Federal Securities Act of 1933, 15 U.S.C. § 77a, *et seq.,* and the Federal Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et seq.,* along with the Securities Exchange Commission's Rule 10b–5 afford remedies for nondisclosure of material facts in the sale of securities. See 3 W. Fletcher, Cyclopedia of the Law of Private Corporations § 900.3 (1986); Annot., 22 A.L.R.3d 793 (1968).