The **WALTER S. CHEESMAN REALTY COMPANY, a Colorado corporation, Petitioner–Appellee and Cross–Appellant,**

v.

Thomas E. **MOORE, Personal Representative of the Estate of Hudson Moore, III, Deceased, Respondent–Appellant and Cross–Appellee.**

No. 86CA0022.

Colorado Court of Appeals, Div. II.

Oct. 27, 1988.

Rehearing Denied Dec. 8, 1988.

Certiorari Denied March 20, 1989.

Baker & Hostetler, James A. Clark, Bruce D. Pringle, Denver, for petitioner-appellee and cross-appellant.

Forrest W. Lewis, Denver, for respondent-appellant and cross-appellee.

KELLY, Chief Judge.

In a proceeding brought by petitioner, The Walter S. Cheesman Realty Company (Cheesman), pursuant to § 7–4–124(8), C.R.S., respondent, Thomas E. Moore, as personal representative of the estate of Hudson Moore, III (Moore), appeals the judgment fixing the value of Moore's stock in Cheesman at $1,000 per share, arguing that the trial court applied an incorrect method of valuation. Cheesman cross-appeals claiming insufficiency of the evidence and that the trial court erred by failing to consider certain relevant factors indicating a lower value for the stock. We reverse.

Cheesman was a closely held corporation whose business was to own and manage real property for the purpose of future development and for its appreciation value. Cheesman's only assets were its substantial real estate holdings, including a 75% interest in an entire city block of downtown Denver, "Block 173," and some securities. Moore was a minority shareholder with 266⅔ shares of non-voting common stock in Cheesman.

In late 1983, a majority of Cheesman's shareholders approved a plan of liquidation and dissolution. Under the plan, Cheesman was to redeem all preferred stock and sell the securities. The real estate and any remaining assets were then to be transferred to a newly-formed Colorado limited partnership in which Cheesman's shareholders were to become partners. The effective date of the plan for valuation purposes was January 6, 1984. When Moore and two other dissenters rejected Cheesman's offer of $625 per share for their stock, Cheesman brought this action pursuant to the dissenters' rights statute, § 7–4–124(8), C.R.S. (1986 Repl. Vol. 3A), seeking a determination of the fair value of the dissenters' shares.

At trial, three valuation experts testified, and their estimates ranged from $625 to over $2,000 per share. All of the experts based their opinions on numerous value factors, although each of them weighed these factors differently. In their calculations, all three experts used values for the real estate from an appraisal performed by Mr. Watson Bowes. However, they differed on whether to include Block 173 at its unencumbered value of $42,560,000 or its value as encumbered with an existing ground lease at $20,355,000.

In its determination of value, the trial court subtracted the company's liabilities from its assets, divided this figure by the number of outstanding shares, and applied a 35% discount for lack of control and marketability of the minority shares to arrive at a value of $1,000 per share for the dissenters' stock. In so doing, the court considered evidence relating to the net asset value, market value, and earnings value of the shares and emphasized the fair market value of the real property. It adopted the $20,355,000 figure as the fair market

value of Block 173, and it deducted from the gross value of the assets $774,000 in capital gains tax owed by Cheesman on the sale of the securities.

To the distress of both parties, the court stated: "The fair value of the shares involved in this case is their fair market value.... The disparity in the definition of fair market value of the stock expressed by the various litigants amounts to a distinction without a difference."

## I.

■ Moore contends that the term "fair value," as used in § 7–4–124, C.R.S. (1986 Repl.Vol. 3A), is not synonymous with fair market value and, thus, the trial court erred in applying a fair market value method of valuing his stock. We agree that the term "fair value" as used in the dissenters' rights statute imports a broader approach to valuation than does the term "fair market value." However, we conclude that the method of valuation employed by the trial court was, in fact, a fair value standard.

■ The dissenters' rights statute defines "fair value" as "the value of shares immediately before the effectuation of the corporate action to which the dissenter objects, excluding any appreciation or depreciation in anticipation of such corporate action, unless such exclusion would be inequitable." Section 7–4–124, C.R.S. (1986 Repl.Vol. 3A). A proper determination of fair value will depend upon the particular circumstances of the corporation involved. The court must consider all relevant value factors, the most important of which are market value, investment or earnings value, and net asset value. *Pioneer Bancorporation, Inc. v. Waters*, 765 P.2d 597 (Colo.App.1988); *accord Richardson v. Palmer Broadcasting Co.*, 353 N.W.2d 374 (Iowa 1984); *In re Valuation of Common Stock of Libby*, 406 A.2d 54 (Me.1979); *Phelps v. Watson–Stillman Co.*, 365 Mo. 1124, 293 S.W.2d 429 (1956). *See generally* 15 W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 7165.4 (1983 rev. vol.); Annot., 48 A.L.R.3d 430 (1973).

■ A judicial determination of fair value is not susceptible of determination by any precise mathematical formula, and certain approaches to valuation may not present a reliable measure of value in a particular case. *Pioneer Bancorporation, Inc. v. Waters, supra; Richardson v. Palmer Broadcasting Co., supra.* Thus, the weight to be assigned to each value factor depends upon the facts and circumstances of each case, and the court may properly decide to assign little or no weight to a factor it determines to be unreliable. *Pioneer Bancorporation, Inc. v. Waters, supra; In re Valuation of Common Stock of Libby, supra.*

Here, Cheesman is a close corporation whose business is to own real estate. The major portion of its assets is real estate. Cheesman's stock has not been publicly traded and no market can accurately be constructed. The event which precipitated Moore's dissent was the corporate decision to terminate Cheesman's existence and liquidate the assets. Under these circumstances, any market value attributable to the dissenter's stock would not be reliable. *See Metromont Materials Corp. v. Pennell*, 270 S.C. 9, 239 S.E.2d 753 (1977).

■ Net asset value, on the other hand, is relevant and entitled to greater weight than other factors if, as in this case, the business of the corporation is substantially devoted to the mere possession of assets, such as real estate. *See Brown v. Hedahl's–Q B & R, Inc.*, 185 N.W.2d 249 (N.D.1971). Net asset value becomes especially important when, as here, the corporate change in question contemplates a complete liquidation of the assets and the corporation is dissolved. *See* 15 W. Fletcher, *supra*, § 7165.4 at 328.

■ Net asset value is the share which a dissenter's stock represents in the value of the net assets of the corporation. 12B W. Fletcher, *supra*, § 5906.14 (1984 rev. vol.). It represents a judgment as to the fair market value of the assets based on the price that would be agreed upon by a will-

ing seller and willing buyer under no compulsion to sell or buy. *See Wainwright v. Lingle,* 236 La. 854, 109 So.2d 444 (1959).

Based on the foregoing, our review of the record, and the language of the amended judgment and decree, but subject to our rulings hereinafter, we conclude that the trial court considered all relevant factors in determining fair value, and properly accorded the greatest weight to net asset value of the shares after full consideration of the fair market value of the real estate assets.

## II.

▪ Moore next contends that the trial court erred in using in its calculations the $20,355,000 valuation of Block 173 as encumbered by the existing ground lease. We disagree.

The fair value of Moore's shares is their value immediately before the effective date of the corporate action to which he objected. Section 7–4–124(1)(c), C.R.S. (1986 Repl.Vol. 3A). The agreed date for purposes of valuing Moore's shares was January 6, 1984. On that date, Block 173 was encumbered by the lease, which, by its terms, allowed the lessees to extend their option to build on the property until 1988, an event that would trigger a 90–year renewal option. The trial court correctly observed that "to predict what the lessees may or may not do in the future is sheer conjecture."

As we have stated above, the value of a corporate asset is its fair market value. Fair market value may be affected by whether the asset is that of a "going concern" or of a business being dissolved. Here, Cheesman was in the process of dissolution. However, anyone who purchased Block 173 on January 6, 1984, would have taken the property subject to the lease. The fair market value of Block 173 was, as Mr. Bowes testified, $20,355,000 with the lease in place. Thus, the court did not err in using this figure in its calculations.

## III.

▪ Moore also contends that the trial court erred in deducting $774,000 in capital gains tax in its determination of the net value of the corporate assets. The thrust of the argument is that the corporation's sale of its securities was in anticipation of liquidation and thus within the exclusion specified in § 7–4–124(1)(c), C.R.S. We disagree.

▪ There is testimony in the record that the tax liability in question arose from the corporation's sale of its securities at a time unconnected with the corporate dissolution. Hence, the securities were assets of the corporation, not of the individual shareholders. Any tax liability incurred by the corporation in selling the assets is a corporate liability which reduces the net value of the corporation. There being evidence in the record to support the trial court judgment, it will not be disturbed on review. *Page v. Clark,* 197 Colo. 306, 592 P.2d 792 (1979).

## IV.

▪ Finally, Moore contends that the trial court erred in applying a 35% minority discount to the value of his shares for lack of control and marketability. We agree.

Among the jurisdictions that have considered the question, there is a diversity of opinion on whether and when a minority discount is appropriate. *Compare Brown v. Allied Corrugated Box Co.,* 91 Cal.App. 3d 477, 154 Cal.Rptr. 170 (1979) *and Woodward v. Quigley,* 257 Iowa 1077, 133 N.W. 2d 38 (1965) *with Perlman v. Permonite Manufacturing Co.,* 568 F.Supp. 222 (N.D. Ind.1983), *aff'd,* 734 F.2d 1283 (7th Cir. 1984) *and Moore v. New Ammest, Inc.,* 6 Kan.App.2d 461, 630 P.2d 167 (1981). Typically, the reason stated for imposing the minority discount is that a minority block of shares does not possess the "control element of value" and is, therefore, less valuable and less attractive to potential buyers. *See Perlman v. Permonite Manufacturing Co., supra; Moore v. New Ammest, Inc., supra.* However, even these cases suggest that a minority discount would not be appropriate if liquidation or

sale of the company as a whole is imminent. *See Perlman v. Permonite Manufacturing Co., supra; Moore v. New Ammest, Inc., supra.*

Here, the corporate action to which Moore objects is the dissolution of the corporation and the liquidation of all corporate assets. Under these circumstances, lack of control and marketability of minority shares are not relevant factors to be considered because the corporation will not continue in existence. Just as a minority share would be no less valuable than any other share if, for example, the corporation as a whole were sold to a single buyer, so too, once the corporation decides to dissolve, any control element of value in the majority block of shares is lost. Thus, the trial court erred in applying a 35% minority discount to the value of Moore's shares.

### V.

In its cross-appeal, Cheesman argues that the trial court erred by failing to take into account an unfunded pension liability and the amount required for redemption of preferred stock in the calculation of the fair value of Moore's stock. Cheesman also argues that there was no competent evidence to support the trial court's valuation of Moore's stock at $1,000 per share.

As to the first contention, the amended judgment does not indicate that these liabilities were deducted from the trial court's determination of fair value. If the trial court determines on remand that these were in fact liabilities of the corporation that must be discharged prior to dissolution, *see* § 7–8–107, C.R.S. (1986 Repl.Vol. 3A), then it must deduct these liabilities in its determination of the fair value of Moore's shares. Since there must be a recalculation of the fair value of Moore's shares on remand, we do not consider Cheesman's argument that the trial court's determination of value was based on incompetent evidence.

The judgment is reversed and the cause is remanded with directions to recalculate the fair value of Moore's shares in a manner consistent with the views expressed in this opinion.

SMITH and VAN CISE, JJ., concur.