Beth Ellen VAN SCHAACK,
Plaintiff–Appellee,

v.

VAN SCHAACK HOLDINGS, LTD., a limited Colorado partnership and successor-in-interest to Van Schaack Corporation, a Colorado corporation; Henry C. Van Schaack, III; Anthony M. Combs; David V.S. Knowles; Thomas B. Knowles, Jr.; Allan R. Phipps; C.W. Schoelzel; and Harry B. Combs, Jr., individually, Defendants–Appellants.

Nos. 91CA1154, 91CA2022.

Colorado Court of Appeals,
Div. V.

Dec. 3, 1992.

Rehearing Denied Jan. 14, 1993.

Certiorari Granted July 19, 1993.

Hart & Trinen, Donald T. Trinen, John F. McBride, Denver, for plaintiff-appellee.

Brenman Raskin Friedlob & Tenenbaum, P.C., Richard H. Goldberg, Edmund L. Epstein, Denver, for defendants-appellants.

Opinion by Judge JONES.

In this action for breach of fiduciary duty, defendants, Van Schaack Holdings, Ltd., as successor in interest to Van Schaack Corporation, Henry C. Van Schaack III, Anthony M. Combs, Davis V.S. Knowles, Thomas B. Knowles, Jr., Allan R. Phipps, C.W. Schoelzel, and Harry B. Combs, Jr., appeal the judgment of the trial court entered on a jury verdict in favor of plaintiff, Beth Ellen Van Schaack. We affirm.

As the result of a financing arrangement in the late 1930s, H.C. Van Schaack, Sr. became a co-owner of a closely-held corporation known as Box Elder Farms Co. that owned farm land to the north, northeast, and east of the Rocky Mountain Arsenal as its principal asset. In 1951, his interest in Box Elder was transferred to Van Schaack Corporation (VSC), which had been established to provide for the welfare of his family, their descendants and spouses, and certain business associates.

In 1956, plaintiff married Henry C. Van Schaack, Jr. (Henry Jr.), a vice-president of VSC, who was the son of Van Schaack, Sr. Henry Jr. eventually became the owner of 750 of VSC's 4,570 outstanding shares. The 750 shares became the property of plaintiff following Henry Jr.'s death in March 1974.

Plaintiff testified that, during her marriage to Henry Jr., she was not involved in the company business and that she neither read any company financial statements, nor attended shareholders meetings. After her husband's death, she was not included on VSC's Board although, with a 16% interest

in VSC, she was the company's largest individual shareholder. Plaintiff was informed of VSC's activities through an annual shareholder letter which included VSC's audited financial statements.

A legend on the stock certificates which plaintiff held contained the following restrictive endorsement:

> The stock represented by this certificate will not be offered for sale or sold to anyone other than the Corporation or its then shareholders unless written approval of the Corporation is first obtained.

Thus, when plaintiff considered selling her VSC shares in late April 1982, she and her then husband, Donald Dunklee, met with Henry C. Van Schaack III (Henry III) to discuss the possibility that she would sell her stock, and also to ascertain its value, the effect of the possible expansion or relocation of Denver's international airport on Box Elder land, and the value of the land. During the trial below, plaintiff testified that Henry III indicated that he had no information bearing on the value of VSC's stock or Box Elder land and that it was his opinion that there was "no way" the new airport would be located on Box Elder land.

Despite Henry III's representations, the VSC Board of Directors had held a special meeting in February 1982 when they were informed of ongoing negotiations to sell 155 acres of Box Elder land and discussed matters such as the value of the land. In addition, the Executive Committee of the VSC Board of Directors met on April 30, 1982, to discuss the details of the sale, which had closed on April 15, 1982, resulting in net proceeds to Box Elder of $1,112,-768.37. Plaintiff was informed of the sale in a shareholders letter dated May 3, 1982, which contained the following notice:

> In early 1982, we [VSC] received an inland dividend of land rather than cash from Box Elder. This land has subsequently been sold and will produce a large capital gain for Van Schaack Corporation.

On May 7, 1982, plaintiff's husband attended the annual VSC shareholders meeting with her proxy. The minutes of the meeting reflect that he asked defendants "if there was any current valuation of the Box Elder property or if Van Schaack Corporation had any indication as to what the current value of the shares in Box Elder Farms Company might be." Henry III responded to his inquiry, in the presence of the other defendants, as follows:

> [T]his corporation presently has no indication of the value of the shares in Box Elder Farms Company in that such valuation would be very complex and would have to be determined by valuing all the land owned by Box Elder. There are many variables which would have to be considered in attempting such a valuation including the fact that the land is not all contiguous, that parts of it are sprinklered, while the majority is dryland farm ground, that there are some producing oil and gas wells, and that there is a great deal of discussion of the possible expansion or relocation of Stapleton International Airport.

In a further effort to ascertain the value of plaintiff's VSC stock, plaintiff's husband, in October 1982, again met with Henry III, who offered his opinion that the land owned by Box Elder was worth $600 per acre. Plaintiff's subsequent offer to sell 250 shares of her stock to VSC at $3,000 per share was rejected by defendants.

In February 1983, Box Elder purchased 40 acres of land contiguous to its other holdings for $2,750 per acre. There is no evidence that plaintiff was informed of this purchase, although the annual shareholders letter, dated April 29, 1983, did make an additional brief reference to the 155–acre land sale that had previously occurred in April 1982.

In April 1983, plaintiff received an offer from a third party to purchase 250 shares of her stock for $2,000 per share. Upon being informed by plaintiff of the third-party offer, defendants responded that plaintiff's shares were subject to the restrictive endorsement contained on the stock certificates and that any transfer was required to be approved by the corporation. They also asked plaintiff to clarify her intentions regarding the offer.

Plaintiff did not pursue the third-party offer. Instead, sometime thereafter, plaintiff offered to sell 250 of her shares to VSC on the same terms as the third-party offer. In July, defendants counter-offered to purchase all of her stock for $1,000,000, or $1,333 per share, payable over four years. On August 1, 1983, plaintiff sold all her shares to VSC for $2,000 per share, or $1.5 million, without interest.

In January 1985, the Denver Regional Council of Governments publicly announced the relocation of Denver's airport onto a portion of the Box Elder land, thereby requiring the condemnation of the land and its sale to Denver. In addition, during that same month, it was publicly announced that a new circulator highway known as E–470 would traverse the Box Elder land.

Plaintiff commenced this action on September 2, 1988, alleging numerous claims against defendants. The case proceeded to trial to a jury on the single claim that defendants had breached their fiduciary duty to plaintiff, as directors and majority shareholders of VSC, in connection with her sale of stock to the company, by misrepresenting material facts or by failing to disclose material facts relating to the value of the land and to the airport relocation and to plans for E–470, all of which affected the value of her stock. After an eleven-day trial, a general verdict was returned in favor of plaintiff and against defendants, jointly and severally, in the amount of $750,000. Following the trial court's entry of judgment in the amount of the verdict plus statutory interest and costs, defendants initiated this appeal.

## I.

Defendants first contend that the trial court erred in instructing the jury that directors of a closely held corporation have a fiduciary duty to disclose material facts to a minority shareholder under the "special facts" doctrine and that, in any event, no special facts existed. They argue that the trial court erred in failing to apply the "majority doctrine," which does not confer a duty of disclosure upon directors. We do not agree.

■ The existence of a fiduciary duty running from the directors of a corporation and its controlling stockholders to the remaining stockholders, including the duty to deal with stockholders fairly and in good faith, has previously been acknowledged by this court. *Wright v. Bayly Corp.*, 41 Colo.App. 313, 587 P.2d 799 (1978). *See River Management Corp. v. Lodge Properties, Inc.*, 829 P.2d 398 (Colo.App.1991) (applying New York law).

■ The basic fiduciary duty of a corporate officer to deal fairly and in good faith with stockholders is enhanced in a close corporation, in which the majority shareholders and directors owe the highest degree of fidelity, loyalty, trust, faith, and confidence to their shareholders. *River Management Corp. v. Lodge Properties, Inc., supra.* It follows, then, that officers in a closely held corporation have a duty to disclose material information to investors from whom they purchase stock. *Jordan v. Duff and Phelps, Inc.*, 815 F.2d 429 (7th Cir.1987). This, of course, raises the issue of what is material information as between the different classes of ownership of such business organizations.

In *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976), the Supreme Court established a general standard of materiality that has been widely adopted by the federal courts in interpreting various provisions of the federal securities acts, and which is implicated in the offer or sale of securities under the Colorado Securities Act. *See Goss v. Clutch Exchange, Inc.*, 701 P.2d 33 (Colo.1985).

The appellate courts in Colorado have adopted this standard which provides:

A misrepresented or omitted fact is considered material if there is a substantial likelihood that a reasonable investor would consider the matter important in making an investment decision. Whether or not the misrepresented or omitted fact is important turns on whether a reasonable investor would regard it as

significantly altering the 'total mix' of information made available.

*Goss v. Clutch Exchange, Inc., supra,* at 36. Thus, in a closely held corporation, officers and directors have a duty to disclose information to investors from whom they purchase stock or who otherwise have an investment decision to make regarding their interest in the corporation which conforms to this general standard of materiality.

Authorities and jurisdictions differ over the nature and extent of the fiduciary duty that a corporate director or officer owes to a shareholder. The fact that our courts have identified the existence of such a duty and have determined that the duty of disclosure is inclusive of material facts suggests that our jurisdiction adheres to the principles espoused under the special facts, or special circumstances, doctrine. *See generally* 3 A.W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 1168 (rev. perm. ed. 1986); *Bailey v. Vaughan,* 178 W.Va. 371, 359 S.E.2d 599 (1987) (director's liability for purchasing stock from shareholders defined in terms of three general rules).

■■■■ Under the special facts or circumstances doctrine, a director or officer owes a limited fiduciary duty in transactions with a stockholder involving the transfer of stock. 3 A.W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 1171 (rev. perm. ed. 1986). *See Shermer v. Baker,* 2 Wash.App. 845, 472 P.2d 589 (1970). This limited duty arises as a result of an officer's possession of special knowledge gained as, and in the course of being, a corporate fiduciary. Hence, the officer, in buying or selling to a shareholder, must disclose those matters relating to the corporate business which the officer knows may affect the stock's value. *Hobart v. Hobart,* 26 Cal.2d 412, 159 P.2d 958 (1945). In view of these principles, a logical interpretation is that, under the special facts or circumstances doctrine, a corporate officer has a duty to disclose material facts in transactions with a stockholder involving the transfer of stock. *See Jordan v. Duff and Phelps, Inc., supra.*

■■■ Here, the trial court appropriately applied the special circumstances doctrine in the case at hand. One instruction given the jury properly reflects the elements, under the special circumstances rule, of a director or officer's limited fiduciary duty to disclose material facts in a transaction involving a minority shareholder's sale of stock to a close corporation. The instruction states:

In order for plaintiff ... to recover from the defendants ... on her claim of breach of fiduciary duty, you must find all of the following have been proved by a preponderance of the evidence:

1. One or more defendants either failed to disclose, or misrepresented one or more material facts affecting the value of Van Schaack Corporation stock owned by [plaintiff];

2. The undisclosed fact(s) were known to the defendant(s) by virtue of their positions as directors of Van Schaack Corporation, but were not made known to plaintiff as a shareholder and were not otherwise matters of public knowledge;

3. Said undisclosed fact(s) were unknown to [plaintiff] at the time of the sale;

4. Said undisclosed fact(s) or misrepresentation was material;

5. One or more defendants' failure to disclose, or misrepresentation of material fact(s) caused the plaintiff to suffer damages.

The inclusion in this instruction of the element which addresses undisclosed facts that are not otherwise matters of public knowledge serves to limit further the scope of the special circumstances under which a corporate officer may have a duty to disclose material information to a stockholder contemplating a sale of shares to a close corporation, and it is appropriately included under the special facts or circumstances doctrine. 3 A.W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 1171 (rev. perm. ed. 1986).

Under the circumstances at issue here, it was properly included in the instructions

given in light of defendants' contention that, even if the special circumstances rule is properly applied here, no special, undisclosed facts could have existed because material facts affecting the value of the corporation were either available to all shareholders upon inspection of the corporate records or were known or available to the public.

■ There is no duty to disclose information to one who reasonably should already be aware of it. *Myzel v. Fields*, 386 F.2d 718 (8th Cir.1967). *See Aschinger v. Columbus Showcase Co.*, 934 F.2d 1402 (6th Cir.1991). Thus, this element is properly included in a fiduciary duty instruction based on the special facts or circumstances doctrine, and the trial court correctly allowed the jury to weigh this element in its deliberations.

■ Furthermore, we do not agree with defendants' contention that, because the corporate officers' nondisclosure here was as to facts that were not material, the trial court improperly submitted the question of a breach of fiduciary duty to the jury as a matter of law. Defendants principally rely on *Garcia v. Cordova*, 930 F.2d 826 (10th Cir.1991), wherein the court observed that, when a shareholder sells stock to a corporate insider, materiality in this context is a mixed question of fact and law. The *Garcia* court held that, although generally more a factual question under the mixed standard of review, the question of materiality may be resolved as a matter of law when the information is so obviously important, or unimportant, to an investor, that reasonable minds cannot differ.

The *Garcia* court determined that information that inherently involves some subjective analysis or interpretation, such as projections, estimates, opinions, motives, or intentions, is "soft" information that may be, if inherently unreliable, immaterial as a matter of law. The facts here do not warrant reversal under this standard.

Here, there was a question as to whether defendants had failed to disclose the value of Box Elder land based upon, among other alleged nondisclosures, undisclosed prices from two land sales. The land sales themselves were not speculative. In addition, the record reflects that there was evidence introduced regarding VSC's knowledge relating to the expansion or relocation of Denver's airport, resulting in tangible, nonspeculative actions on the part of VSC, including committee formation and tax advice, that a jury may have been able to consider material, undisclosed facts.

Furthermore, the trial court provided the jury with an instruction on the definition of a material fact that properly conforms to the definition adopted in *Goss v. Clutch Exchange, Inc., supra. See Garcia v. Cordova, supra.* Hence, the jury was properly able to consider whether all of the facts were or were not material so as to warrant disclosure.

■ Finally, we are unpersuaded by defendants' arguments that the trial court erred in refusing to instruct the jury on comparative negligence in conjunction with plaintiff's breach of fiduciary duty claim. Plaintiff's actions could not have affected the jury's determination as to whether defendants had breached their fiduciary duty to her as a shareholder. *See, e.g., Carman v. Heber*, 43 Colo.App. 5, 601 P.2d 646 (1979).

Accordingly, we conclude that the trial court properly instructed the jury that directors of a closely held corporation have a duty to disclose material facts to a minority shareholder under the special facts or circumstances doctrine. Additionally, we conclude that the facts in question, taken together, were sufficiently material so as to warrant the jury's consideration of their materiality regarding the duty on the part of corporate officers to disclose them to plaintiff, as shareholder.

## II.

Defendants next contend that the trial court erred in entering judgment because there was insufficient evidence to support the jury's finding as to the value of VSC's assets and plaintiff's interest therein. They argue that the trial court improperly allowed admission of evidence of inappropriate methods of valuation and that, there-

fore, the jury arrived at an erroneous valuation of assets. We disagree.

The trial court instructed the jurors that, if they found defendants to have breached their fiduciary duty to plaintiff, whatever damages were determined to have been incurred were to be measured by "the difference between the value received by plaintiff for her stock and the fair market value of the stock at the time of the sale."

▮▮▮ A proper determination of the fair market value of a corporation's shares depends upon the particular circumstances of the corporation involved. The court must consider all relevant value factors, including market value and net asset value. In a close corporation, in which stock is not publicly traded, a fair "market" for stock cannot accurately be constructed. Net asset value, therefore, becomes a more relevant measure of the value of the corporate securities, particularly if the business of the corporation is substantially devoted to the mere possession of assets, such as real estate. *Walter S. Cheesman Realty Co. v. Moore,* 770 P.2d 1308 (Colo.App.1988).

▮▮▮ Here, the record reflects that evidence was introduced to demonstrate the value of VSC's stock based both upon the fair market value of its real estate holdings, including its interest in the Box Elder land, and upon the fair market value of its other assets and liabilities, which primarily consisted of a portfolio of securities. Thus, the trial court permitted the introduction of evidence that would allow the jury to assess net asset value, which is a valuation method appropriately employed in assessing worth of close corporations. *See Walter S. Cheesman Realty Co. v. Moore, supra.*

▮▮▮ Additionally, the fact that the trial court permitted the introduction of considerable evidence relating to the fair market value of the Box Elder land is appropriate under these circumstances. Here, the evidence established that VSC's principal asset was its interest in Box Elder. Thus, the fair market value of the Box Elder land was a decisive factor contributing to the ultimate net asset value of VSC's stock.

We, therefore, conclude that both the fair market value and net asset value methods of valuation were properly employed in this situation.

▮▮▮ Moreover, the trial court appropriately permitted the jury to consider the reasonable future use of the Box Elder land. The reasonable future use of a property may be considered as evidence in ascertaining a property's fair market value when the evidence rises to the level of a probability that the future use will occur, insofar as it would reasonably be reflected in present market value. *Stark v. Poudre School District R–1,* 192 Colo. 396, 560 P.2d 77 (1977); *Department of Health v. Hecla Mining Co.,* 781 P.2d 122 (Colo.App. 1989). *See Board of County Commissioners v. Vail Associates, Ltd.,* 171 Colo. 381, 468 P.2d 842 (1970).

The jury was instructed to base its findings only on probabilities, as opposed to possibilities, surmise, speculation, or conjecture. Thus, the jury was in a position to determine whether future uses of the Box Elder land rose to the level of probabilities that impacted upon the land's present market value.

Defendants were free to cross-examine as to how any future use of the Box Elder land would impact its present market value. In addition, defendants were at liberty to present their own expert testimony regarding the value of the land as of the sale date. Defendants declined to present such testimony, but instead relied upon the opinion of a corporate director as to the land's value at the time of sale.

Because the trial court appropriately allowed the jury to consider the probable future uses of the property, here, and defendants were at liberty to challenge the evidence relating to future land use, we find no merit in defendants' argument that the trial court erred in this regard.

▮▮▮ We also find no merit in defendants' argument that the trial court erred in allowing the jury, in assessing the total value of the property, to consider opinion evidence relating to the value of ground water underlying the land.

The record reflects that plaintiff's water expert was properly certified, cross-examination was permitted, and the trial court did not preclude expert witness rebuttal testimony. The value of the water underlying the Box Elder property was a question for the jurors based upon their consideration of the expert testimony presented to them. The jurors were properly instructed as to the consideration to be given to the expert testimony, and this court must presume that they followed that instruction. *Schmutz v. Bolles*, 800 P.2d 1307 (Colo.1990).

Accordingly, we conclude that the trial court allowed the jury to consider appropriate methods of valuation in assessing the value of plaintiff's interest in this close corporation. We also determine that the evidence was sufficient to support the jury's finding in this regard.

### III.

Defendants also contend that the trial court erred in allowing remarks by plaintiff's counsel during opening argument which were unfairly prejudicial. They maintain that counsel's references prevented them from receiving a fair trial and that the entry of judgment must be reversed. In addition, defendants take exception to the admission of certain other evidence. We perceive no reversible error.

During plaintiff's opening argument, her counsel stated that the evidence would show that defendants' valuation of the Box Elder property changed depending on to whom they were talking and that: "If they were talking to a condemnation panel, the land was worth $10,000 an acre." Defendants objected to this reference on the ground that it violated the court's *in limine* order, wherein the court had directed counsel not to make any statements to the jury regarding the condemnation price of the Box Elder land.

For a violation of an *in limine* order to serve as a basis for a new trial, the order must be clearly violated and the violation sufficiently prejudicial as to require a reversal. *Halliburton v. Public Service Co.*, 804 P.2d 213 (Colo.App.1990).

In ruling on the objection, the trial court observed that it had also ordered *in limine* that it "does not exclude other things of 1988," such as experts' testimony upon which the Commission's findings were based. The court concluded, implicitly, that no violation of its *in limine* order had occurred because the purpose of its order was to prevent disclosure of the price received for the land in the condemnation action, and the fact that the price had not been disclosed meant the order had not been violated.

This explanation demonstrates that plaintiff's counsel's remarks during opening argument did not clearly violate that order. Accordingly, we perceive no reversible error in this regard.

More troubling was plaintiff's counsel's additional opening argument observation that the city had condemned some of the Box Elder property but that: "The judge has indicated that the value that was awarded as a result of that matter is not to be allowed into evidence so I will not be referring to it." Defendants immediately objected to this comment and moved for a mistrial, which the trial court denied, although the court agreed that the reference was extremely improper and further noted that the statement nearly violated CRE 103.

CRE 103 provides, in part, as follows:

In jury cases, proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means, such as making statements ... in the hearing of the jury.

The impropriety of defense counsel's opening remark relates to his reference to evidence that the court had ruled as inadmissible in its *in limine* order. Namely, the trial court had excluded evidence relating to the Box Elder condemnation award. Counsel's reference to the award "suggested" that excluded evidence. *See* CRE 103.

Here, although counsel's remark was improper in view of CRE 103, it did not meet the requirements of *Halliburton v. Public*

*Service Co., supra,* that reversal is warranted only if there is a *clear* violation of the *in limine* order.

As the trial court observed in denying the motion for mistrial, counsel fortunately had the restraint not to tell the jury what the condemnation findings were. Thus, although counsel had been ordered to refrain from making statements concerning the condemnation findings, we cannot conclude that the reference here clearly violated the order because the findings were not revealed.

Moreover, absent reference to the specific details of the excluded evidence, rather than to the general fact that evidence had been excluded, we cannot conclude that the evidence is sufficiently prejudicial to warrant reversal. *See Halliburton v. Public Service Co., supra.* Accordingly, we perceive no reversible error in this regard, although we do not condone counsel's conduct.

We also perceive no grounds for reversal with respect to defendants' objection to the admission of evidence relating to certain defendants' conduct. The record reflects that this evidence was properly admitted for the purpose of showing plaintiff's state of mind and to rebut defendants' representations of their own state of mind.

Finally, we find no merit in defendants' contention that their right to a fair trial was impeached by their inability to cross-examine plaintiff's husband because of his death twelve days after he was hospitalized following twenty minutes of testimony on direct examination.

The record reflects that defendants were allowed to read into evidence the witness' testimony that had been taken at a deposition, as well as a prior affidavit he had executed. The information covered in the deposition and the affidavit was the same information elicited during the twenty minutes of direct trial testimony, except that much of it was devoted to cross-examination of the same subject matter. No new evidence had been elicited during the direct testimony.

Prior sworn testimony, subject to cross-examination, is admissible when a witness is unavailable. *See* CRE 804(a)(4) and (b)(1). At the time that the prior sworn testimony was given, defendants had the opportunity to, and at the deposition did, cross-examine the witness who later became unavailable, as to all matters raised in the trial during plaintiff's direct examination of the witness, Thus, we determine that defendants' right to cross-examination was not violated under these circumstances.

## IV.

Defendants further contend that the evidence established that this action is barred by the application of the five year statute of limitations and that, consequently, the trial court erred in failing to direct a verdict in their favor. Plaintiff maintains that the evidence supports the jury's finding that the applicable statute of limitations does not bar the action herein. We agree with plaintiff.

At the time plaintiff sold her stock to defendants on August 3, 1983, the statute of limitations that was in effect was found under § 13–80–114, C.R.S. (originally enacted Colo. Sess. Laws 1868, ch. LV, § 13 at 439; repealed and reenacted July 1, 1986, Colo. Sess. Laws 1986, ch. 114, § 13–80–101(1)(f) at 695). Prior to its repeal, § 13–80–114 provided that an action for breach of fiduciary duty could not be commenced more than five years after the cause of action accrued. *See Frisco Motel Partnership v. H.S.M. Corp.,* 791 P.2d 1195 (Colo. App.1989).

For purposes of the statute of limitations, an action accrues when the claimant is aware, or reasonably should be aware, of facts which would make a reasonable person suspicious of the wrongdoing asserted. *Lucas v. Abbott, Jr.,* 198 Colo. 477, 601 P.2d 1376 (1979).

The record reflects that the jury was correctly instructed that defendants' statute of limitation defense would be proved if they found that plaintiff "was aware, or reasonably should have been

aware, of facts which would make a reasonable person suspicious of a breach of fiduciary duty, more than five years before this action was filed on 9/2/88." Essentially, the jury was charged with determining whether plaintiff became aware, or reasonably should have been aware, of the facts indicating defendants' breach of fiduciary duty before or during the first thirty-two days after she sold her stock on August 3, 1983.

■ Whether plaintiff was reasonably on notice of the facts underlying her breach of fiduciary duty claim presented a disputed factual question that could only be determined by the jury after presentation of the evidence. *Phillips v. Beethe*, 679 P.2d 126 (Colo.App.1984). Because the record reflects that the jury was properly instructed and was presented with sufficient evidence to make a finding in this regard, we perceive no reason to disturb that finding on appeal.

### V.

Finally, defendants argue that the trial court abused its discretion by awarding plaintiff her expert witness fees without conducting a hearing to determine the reasonableness of such an award. Additionally, they contend that the trial court erred in awarding fees for two witnesses. Defendants' arguments are without merit.

■ C.R.C.P. 121 § 1–22 directs that the determination of costs shall be in accordance with Practice Standard § 1–15, which in turn provides for court action based on the bill of costs submitted, with a hearing requiring specific request and approval, unless such is ordered *sua sponte*. The record does not reflect that defendants requested a hearing. Defendants have thus waived their right to a hearing. *Prospero Associates v. Redactron Corp.*, 682 P.2d 1193 (Colo.App.1983).

[27] Defendants' assertion that the trial court erred by awarding expert witness fees for two designated experts who did not testify at trial is also without merit. The award of expert witness fees is within the trial court's discretion. *Leadville Wa-*

*ter Co. v. Parkville Water District*, 164 Colo. 362, 436 P.2d 659 (1967). The trial court's award of expert witness fees here is supported by evidence in the record. Accordingly, we perceive no abuse of the court's discretion.

The judgment is affirmed in all respects.

HUME and MARQUEZ, JJ., concur.